Dear Mr. Plaisance:
You have requested the opinion of this office regarding the hospital audit program conducted by the State Employees Group Benefits Program ("SEGBP"). It is my understanding that the SEGBP routinely audits hospital bills over a certain dollar amount, and that this audit by necessity entails a review of the patient's hospital records, including medical records and charts, physician's orders, and pharmaceutical orders and records.
With regard to the hospital program, you requested our opinion on two issues:
Question 1. Does the SEGBP need the specific written authorization of the covered person on whose behalf benefits were paid in order to audit that person's hospital charges?
We cannot find any legal authority that would require a hospital to make either patient records or billing information available to the SEGBP upon request. It is, therefore, our opinion that the SEGBP is forced to comply with a hospital's request for specific written authorization.
As you point out in your letter, La. R.S. 40:2144(B) provides for access to hospital records by the patient or "his authorized representatives". The statute defines "representative" as ". . . the parent of a minor patient, tutor, curator, trustee, attorney, succession representative or other legal agent of the patient".
R.S. 40:1299.96(A)(2)(a) further provides that medical records of a patient maintained in a health care provider's office are the property and business records of the said provider. Paragraph (2)(b) provides that a patient or his legal representative, or in the case of a deceased patient, the executor of his will, the administrator of his estate, the surviving spouse, the parents, or the children of the deceased patient shall have a right to obtain copies of any medical, hospital, or other record relating to the patient's medical treatment, history, or condition.
It is our opinion that both R.S. 40:2144(B) and R.S.40:1299.96(A)(2)(b) denote the Legislature's intention to reserve control of access to hospital records to the patient. That intention is manifested by the Legislature's use of the word "authorized" and by its limited definition of "representative" in R.S. 40:2144(B), and the words "patient or his legal representative" in R.S. 40:1299.96.
You state that the SEGBP's position is that, pursuant to administrative rules previously adopted by the Board, the SEGBP is the authorized representative of the patient for the purpose of reviewing hospital bills for overpayments and errors.
In support of your position, you cite the provisions of Article 4, Sections VI and VIII of a plan document of benefits adopted pursuant to the Administrative Procedures Act. Those sections state:
"VI. RIGHT TO RECEIVE AND RELEASE INFORMATION
 The Program may release to, or obtain from any company, organization, or person, without consent of or notice to any person, any information regarding any person which the Program deems necessary to carry out this provision, or like terms of any Plan, or to determine how, or if, they apply. Any claimant under this Plan shall furnish to the Program such information as may be necessary to implement this provision."
"VIII. COOPERATION OF EMPLOYEE
 The Employee shall be required to furnish the Program, upon request, any information which the Program may require to implement the provisions of the contract. Such requests for information shall include, but not be limited to, a verification of student status of dependent Children between the ages of 19 and 24 and the dependency status of covered Dependents. Failure to furnish the requested information shall constitute reason for denial of benefits."
It is our opinion that these plan sections only address the cooperation of "claimants" and "employees." The plan sections do not impose a duty of compliance on health care providers.
In further support of your position, you argue that a signed claim form from the patient, even for another condition, constitutes authorization for the audit of a hospital confinement. You state that patients are required to file a claim form at least once a year, and that the claim form contains the following attestation (the "attestation") by the patient:
 "I hereby authorize any physician, hospital or other medically related facility, insurance company, or other organization, institution or person to release to the Board of Trustees, State Employees Group Benefits Program, its utilization review firm or its representative, any records or information relating to my claim or any facts concerning the injury, illness, treatment or planned treatment of myself or my dependents. I authorize State Employees Group Benefits Program to release to and receive from its utilization review firm any such medical information. Such medical information may be released in writing or by telephone. A copy of this authorization shall be considered as effective and as valid as the original."
It is our opinion that the attestation only authorizes the release of information related to the specific claim for which the form is submitted. The language contained in the attestation, specifically "my claim" and "the injury, illness, treatment or planned treatment" (emphasis added) does not allow for broad application to other claims or other injuries, illnesses or treatments.
Question 2. Does the Board of Trustees have the authority to adopt the following administrative rule through the Administrative Procedures Act and, if so, would this rule be valid:
 "HOSPITAL AUDITS BY THE STATE EMPLOYEES GROUP BENEFITS PROGRAM
 A. The State Employees Group Benefits Program, hereafter referred to as "the Program", shall select hospital bills for audit based upon the size of the bill, the hospital's historical error rate in billing, the likelihood of substantial recovery as a result of the audit and such other criteria as the Program may, in its sole discretion, from time to time employ.
 B. The Program shall notify a hospital, in writing, of its intent to audit a hospital bill. It shall be the hospital's responsibility to comply with any audit request and to schedule and assist in the performance of such requested audit within 30 days from the date of the receipt of the request.
 C. In the event a hospital fails to schedule and assist in the performance of such audit within 30 days of the receipt of the request, a penalty of $100 per day shall be imposed from the 31st through the day before the date such audit is commenced.
 D. The Program is authorized to withhold the amount of such penalty from any payments due the hospital for services rendered to any plan member or plan member's dependent covered by the Program. The hospital shall have no cause of action to recover the penalty amount from the plan member or dependent from whose hospital bill the penalty was collected."
It is the opinion of this office that the Board does not have the authority to adopt or enforce such a rule. The Board of Trustees has an understandable interest in assuring proper hospital billing procedures. However, the Board's statutory authority (LSA-R.S. 42:821 et seq.) does not entitle it to impose rules and restrictions or penalties upon the hospitals who treat plan members merely because they treat plan members.
Although the Board of Trustees is authorized by statute to contract with health care providers (R.S. 42:851.5), it is given no authority to regulate the conduct of health care providers, or impose sanctions on them.
The Board, an administrative agency of the State, cannot adopt and enforce an administrative rule which enlarges the powers delegated to it by the legislature. Realty Mart, Inc. v. Louisiana Board of Tax Appeals, 336 So.2d 52 (La.App. 1st Cir. 1976); Kramer v. State board of Veterinary Medical Examiners,55 So.2d 93 (La.App. 1st Cir. 1951).
 "Although a regulatory agency is entitled to a certain amount of hegemony over the statutes it is entrusted to administer, it cannot go too far afield from the letter of the law even if it perceives that it is furthering the law's spirit . . . the principal is well established that an administrative agency must act in conformity with its statutory authority, which it cannot exceed." Benson Gold Chevrolet, Inc. v. Louisiana Motor Vehicle Commission, 403 So.2d 13 (La. 1981).
The SEGBP may wish to seek the introduction of legislation to accomplish what it is attempting to achieve through the adoption of administrative rules.
This opinion does not address the issue of the need for agency adjudicatory hearings when property interests or contractual rights are adversely affected by state action.
If we can be of further service in this regard, please advise.
Sincerely,
 RICHARD P. IEYOUB Attorney General
 BY: JEANNE-MARIE ZERINGUE Assistant Attorney General
RPI:JMZ:jv 2692m